IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ULISES SANTAMARIA,

    Petitioner,                    No. CIV S-08-1797 WBS DAD P

    vs.

STOLC, Warden,

    Respondent.                 FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition before the court challenges petitioner's judgment of conviction entered in the San Joaquin County Superior Court in 2004 for seven felony counts of lewd acts on a child in violation of California Penal Code § 288(a) and one count of misdemeanor child endangerment in violation of California Penal Code § 273a(b)). Petitioner seeks federal habeas relief on the grounds that: (1) evidence of Child Sexual Abuse Accommodation Syndrome was improperly admitted at his trial; (2) his trial counsel rendered ineffective assistance; (3) his appellate counsel rendered ineffective assistance; and (4) the trial judge's decision to impose consecutive sentences violated federal law.

        Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

1

PROCEDURAL BACKGROUND

On October 7, 2004, a San Joaquin County Superior Court jury found petitioner guilty of seven felony counts of lewd acts on a child and one count of misdemeanor child endangerment. (Notice of Lodging Documents on December 16, 2008 (Doc. No. 17), Clerk's Transcript on Appeal (CT) at 211-21.) Following his conviction, petitioner was sentenced on November 8, 2004, to a aggregate state prison term of eighteen-years. (Id. at 297.)

Petitioner appealed his judgment of conviction to the California Court of Appeal for the Third Appellate District. On October 20, 2006, the judgment of conviction was affirmed in a reasoned opinion. (Resp't's Lod. Doc. 7.) Petitioner then filed a petition for review with the California Supreme Court. (Resp't's Lod. Doc. 8.) On January 3, 2007, the California Supreme Court summarily denied that petition. (Pet. at 30.)[1]

Petitioner thereafter filed a petition for writ of habeas corpus in the San Joaquin County Superior Court. (Resp't's Lod. Doc. 9.) That petition was denied in a reasoned opinion on July 25, 2007. (Resp't's Lod. Doc. 10.) Following that decision, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the Third Appellate District. (Id.) On August 30, 2007, that petition was summarily denied. (Resp't's Lod. Doc. 11.) Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court which was summarily denied on February 27, 2008. (Pet. at 39.)

On August 4, 2008, petitioner filed the federal habeas petition now pending before the court. (Doc. No. 1.) Respondent filed an answer on December 9, 2008. (Doc. No. 16.) Petitioner has not filed a traverse.

FACTUAL BACKGROUND

On April 6, 2004, the San Joaquin County District Attorney's Office filed an information charging petitioner with seven felony counts of lewd acts on a child, one felony

---

[1] Page number citations such as this one are to the page number reflected on the courts CM/ECF system and not to page numbers assigned by petitioner.

count of the continuous sexual abuse of a minor and one count of child endangerment. (CT at 67-73.) The alleged victim was identified as "Connie A." (Id.)[2] Prior to trial, petitioner's trial counsel objected to the introduction of expert testimony on Child Sexual Abuse Accommodation Syndrome ("CSAAS"). In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following background with respect to this issue:

> On July 2, 2004, the prosecution filed a motion in limine requesting they be permitted to present the testimony of David Love as an expert on CSAAS. CSAAS attempts to explain how a child generally copes with or adjusts to sexual abuse, including the exhibition of certain seemingly paradoxical behaviors. Defendant filed an objection to the presentation of such evidence based on discovery rule violations and requested an Evidence Code section 402 hearing. Defendant also requested the court order that the CSAAS evidence be limited to dispelling myths regarding how child sexual abuse victims act and that the court strictly prohibit any "profile" evidence of child molesters or victims of molest.
>
> Judge Terrence Van Oss denied defendant's request for a continuance and held an Evidence Code section 402 hearing on July 7, 2004. At the hearing, defense counsel argued, inter alia, that society's attitudes may have changed and perhaps there were no longer misconceptions requiring the introduction of CSAAS evidence. Judge Van Oss ruled that CSAAS evidence was admissible but that the prosecution was limited to presenting evidence of the syndrome generally and could not have Love talk about the facts of this specific case.
>
> On August 20, 2004, at the beginning of trial, defendant made another motion in limine-this time in front of the trial judge, William J. Murray. Defendant requested another Evidence Code section 402 hearing and objected to some of the CSAAS evidence as failing the Kelly-Frye test for the admission of scientific evidence. (Frye v. United States (D.C. Cir. 1923) 293 Fed. 1013; People v. Kelly (1976) 17 Cal.3d 24, 39.) Counsel also raised concerns about the hypothetical questions used by the prosecutor in the previous hearing and objected, again, to the general admissibility of the CSAAS evidence. Judge Murray agreed to a supplemental Evidence Code section 402 hearing for counsel to explore the testimony regarding a child victim's inability to recall details of the molestations. At the conclusion of the hearing, Judge

---

[2] A recitation of the evidence presented at petitioner's trial underlying those offenses is unnecessary to the resolution of his claims presented in the petition before this court.

3

> Murray ruled that the CSAAS evidence was admissible but that the prosecutor could use only more "generic" hypothetical questions than she had at the hearing in front of Judge Van Oss and must refrain from using case specific hypothetical questions.

(Resp't's Lod. Doc. 7 (hereinafter Opinion) at 2-3.)

On October 7, 2004, a jury found petitioner guilty of seven felony counts of lewd acts on a child and one count of misdemeanor child endangerment. (CT at 211-21.) Petitioner was found not guilty on one felony count of the continual sexual abuse of a minor. (Id. at 219.)

## ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claims

   A. CSAAS Evidence

Petitioner asserts that the trial court erred by admitting expert testimony on CSAAS. Specifically, petitioner argues that "without evidence of widely held public

misconceptions" about how child victims react to abuse, the introduction of testimony on CSAAS was not justified, especially "[i]n light of the recognized danger inherent in CSAAS evidence and [its] limited admissibility . . . ." Pet. at 12-15.) Petitioner claims that as a result of the introduction of this evidence the jury heard expert testimony that "children often do not disclose abuse for years, acquiesce to abuse, cannot remember details and give conflicting and unconvincing stories," leading the jury to believe that Connie's testimony was "unimpeachable." (Id.) Petitioner argues that because the evidence against him was "hardly overwhelming," the "strong prejudicial effect exerted" by the CSAAS testimony requires that his conviction be overturned. (Id. at 16.)

The last reasoned state court decision addressing this claim is from the California Court of Appeal. That court specifically rejected petitioner's argument that the CSAAS evidence should not have been introduced at his trial unless or until the prosecution established that there were widely held public misconceptions about how child victims react to abuse. In so holding, the state appellate court reasoned as follows:

> CSAAS is a therapeutic tool/research approach that seeks to describe and explain how children commonly react to molestation. Often, the reactive behaviors seem paradoxical - for example, when a child delays in reporting the molestation, or recants the account, or explains it inconsistently. (See People v. Bowker (1988) 203 Cal.App.3d 385, 393-394; People v. Patino (1994) 26 Cal.App.4th 1737, 1744-1746 (Patino); see also CALJIC No. 10.64.) "Although inadmissible to prove that a molestation occurred, CSAAS testimony has been held admissible for the limited purpose of disabusing a jury of misconceptions it might hold about how a child reacts to a molestation. [Citations.]" (Patino, supra, 26 Cal .App.4th at p. 1744.) "'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (People v. McAlpin (1991) 53 Cal.3d 1289, 1301.)
>
> "Identifying a 'myth' or 'misconception' has not been interpreted as requiring the prosecution to expressly state on the record the evidence which is inconsistent with the finding of molestation. It is sufficient if the victim's credibility is placed in issue due to the paradoxical behavior, including a delay in reporting a molestation.

6

> [Citations.]" (Patino, supra, 26 Cal.App.4th at pp. 1744-1745; People v. Sanchez (1989) 208 Cal.App.3d 721, 735-736, criticized on other grounds in People v. Jones (1990) 51 Cal.3d 294, 311.) "[T]he prosecution should be permitted to introduce properly limited credibility evidence if the issue of a specific misconception is suggested by the evidence." (Patino, supra, 26 Cal.App.4th at p. 1745; see also People v. Sanchez, supra, 208 Cal.App.3d at pp. 735-736 [once "the credibility issue was already fully present in the case[,] . . . the rehabilitative evidence on this issue was appropriately admitted"].)
>
> Defendant acknowledges this caselaw but argues that the cases are 10 years or more old and that "the public state of knowledge as to child victims and their reactions *may well* have radically shifted in the interim." (Italics added.) Accordingly, he argues, the prosecution should have been required to show that "the public still labors under myths and misconceptions about child victims," instead of relying on the misconceptions previously identified and recognized by California caselaw.
>
> The California Supreme Court has recently recognized the need for CSAAS expert testimony to disabuse jurors of commonly held misconceptions about child sexual abuse and to explain the children's seemingly self-impeaching behavior in an opinion filed only weeks before the start of defendant's trial. (See People v. Brown (2004) 33 Cal.4th 892, 905-908.) Accordingly, we decline defendant's invitation to revisit and abandon what is now established precedent based on his speculation that CSAAS evidence may no longer be needed to dispel misconceptions.

(Opinion at 4-6.)

Absent some federal constitutional violation, a violation of state law regarding the admissibility of evidence does not provide a basis for habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point"). A writ of habeas corpus will be granted for the erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover,

recognize, and take due account of its shortcomings.'" Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting Barefoot v. Estelle, 463 U.S. 880, 899 (1983)).  Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." Jammal, 926 F.2d at 920.  Even then, evidence must "be of such quality as necessarily prevents a fair trial." Id. (quoting Kealohapauole v. Shimoda, 800 F.2d 1463 (9th Cir. 1986)).

        The Ninth Circuit has approved of the California Court of Appeal's holding in People v. Patino, 26 Cal.App.4th 1737 (1994), that the use of CSAAS evidence in a child abuse case does not necessarily violate a criminal defendant's due process rights.  Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003).  "[W]e have held that CSAAS testimony is admissible in federal child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth." Id. (citing United States v. Bighead, 128 F.3d 1329 (9th Cir. 1997).  See also Lowe v. Walker, No. C 08-005 SI (pr), 2009 WL 1691597, at *5 (N.D. Cal. June 15, 2009) ("The Ninth Circuit has upheld the use of CSAAS evidence when, as in the instant case, it is used to show the general characteristics of victims and is used to opine that a specific child is telling the truth.")

        Here, the expert who testified regarding CSAAS informed the jury that he was unaware of the particular facts of petitioner's case and had never met with the victim. (Reporter's Transcripts on Appeal (RT) at 1310, 1335.)  Indeed, petitioner admits that at his trial the prosecution expert's "specific opinion relative to this victim was not allowed . . ." (Pet. at 13.)  Moreover, the trial judge issued a limiting instruction to the jury, instructing them that:

> Evidence has been presented to you concerning Child Sexual Abuse Accommodation Syndrome.  This evidence is not received and must not be considered by you as proof that the alleged victim's molestation claim is true.
>
> Child Sexual Abuse Accommodation Syndrome research is based upon an approach that is completely different from that which you must take in the case.  The syndrome research begins with the assumption that a molestation has occurred and seeks to describe and explain common reactions of children to that experience.  As distinguished from that research approach, you are to presume the

>     defendant is innocent. The People have the burden of proving guilt
>     beyond a reasonable doubt.
>
>     You should consider the evidence concerning the syndrome and its
>     effects only for the limited purpose of showing, if it does, that the
>     alleged victim's reactions, as demonstrated by the evidence, are not
>     inconsistent with her having been molested.

(RT at 2412-13.) Jurors are presumed to have followed the court's instructions in this regard. Kansas v. Marsh, 548 U.S. 163, 179 (2006); Richardson v. Marsh, 481 U.S. 200, 206 (1987) (applying "the almost invariable assumption of the law that jurors follow their instructions").

        The prosecution expert who testified regarding CSAAS did not refer to the victim in any manner, other than to acknowledge that he had never met with her, and certainly did not opine that she was telling the truth. Moreover the jury was specifically instructed that the expert's testimony on CSAAS was not be considered as proof that the victim's claims of molestation were true and, in addition, that petitioner was to be presumed innocent. The admission of this expert testimony appears to have been proper under state law and petitioner has failed to show that its admission resulted in a violation of his rights under the U.S. Constitution. Thus, the California Court of Appeal's rejection of this claim was neither contrary to, nor an unreasonable application of clearly established federal law. Accordingly, federal habeas relief as to this claim should be denied.

        B. <u>Ineffective Assistance of Trial Counsel</u>

        On appeal, petitioner attempted to challenge specific hypothetical questions asked by the prosecutor of the CSAAS expert. (Resp't's Lod. Doc. 4 at 17-21.) The California Court of Appeal reject his arguments in this regard, finding the issue "forfeited" because petitioner's trial counsel had failed to object to those questions at the trial. (Opinion at 7-8.) Petitioner now asserts that his trial counsel rendered ineffective assistance by failing to object to those questions and for failing to move to strike the testimony provided in response thereto. (Pet. at 19.)

        The last reasoned state court decision as to this claim is from the San Joaquin County Superior Court. In denying petitioner's May 22, 2007, state habeas petition that court

9

denied habeas relief and rejected this claim, stating:

> The questioning involved an expert on CSAAS (Child Sexual Abuse Accommodation Syndrome). During in limine motions, the court ordered that CSAAS evidence was admissible, but that the prosecutor could use only "generic" hypothetical questions and must refrain from using case specific questions. After giving generalized testimony about the syndrome, the expert was asked if CSAAS applied to older children and more specifically, to 14-year olds. Defense counsel did not object and the expert answered affirmatively. The prosecutor then asked if it was consistent with the syndrome for a victim to report a physical abuse before reporting a sexual abuse. No objection was made. The expert answered that it was often the case. The prosecutor then asked if it would be consistent with the syndrome for a child to deny molestation when someone close to them asked. No objection was made. The expert answered, "Yes."
>
> At this point, defense counsel objected telling the court that the questioning was *starting* to create a "subtle profile" of a child with CSAAS. The trial court addressed her concern out of the presence of the jury, reiterated the boundaries of permissible questions and informed the prosecutor which of her remaining questions were appropriate and which were not. There was no request by defense counsel that the previous testimony be stricken.
>
> It is clear from the sequence of events that trial counsel was well aware of the nature of the questioning and objected when she believed that it began to approach an impermissible level. The 3rd District Court of Appeal did not rule that the questions were improper and/or in violation of the in limine order. Instead, the appellate court found that any objection was waived.
>
> Be that as it may, if the record contains an explanation for counsel's actions, the ineffective assistance claim will fail because the court will defer to counsel's decision, and presume it falls within the wide range of reasonable tactical decisions available to defense counsel under similar circumstances. See People v. Weaver (2001) 26 C.4th 876, 925. Here, the record indicates that defense counsel did not perceive the hypotheticals asked up to the point of her objections to be in violation of the in limine order, but rather, heading that way.
>
> Moreover, even if this court assumed that defense counsel's performance was deficient, Petitioner has not shown that he was prejudiced by the alleged deficiency. Prejudice must be established as "a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." In re Clark (1993) 5 C.4th 750, 766.

/////

(Resp't's Lod. Doc 11 at 31.)

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. 466 U.S. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.' " Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

/////

Here, petitioner does not identify which specific questions his trial counsel should have objected to, or which portions of testimony his counsel should have moved to strike. Instead petitioner merely argues that his trial counsel "failed to object" to the prosecutor's "fact-specific hypothetical questions of its expert witness." (Pet. at 19.)

Review of the record finds that, after a number of general questions about CSAAS, the prosecutor asked three "hypothetical" questions that could be characterized as "fact-specific": 1) if CSAAS applied to 14-year old children; 2) if it was consistent with CSAAS for a victim to report physical abuse before reporting sexual abuse; and 3) if it was consistent with CSAAS for a child to deny molestation occurred when asked by someone close to them. (RT at 1310-11.) Only thereafter did petitioner's trial counsel pose an objection. (Id. at 1311.)

After the jury was excused the prosecutor, petitioner's trial counsel, and the trial judge reviewed each of the prosecutor's remaining proposed hypothetical questions. (Id. at 1311.) During that discussion the trial judge indicated that the previously asked question about disclosing physical abuse before sexual abuse was allowable. (Id. at 1319.) After the jury returned, the prosecutor again asked if it would be consistent with CSAAS for a child to deny that they were molested if asked, this time leaving out "by someone close to them," which question the trial judge had previously ruled was appropriate. (Id.)

Thus the trial judge approved of one of the three questions exactly as asked by the prosecutor, approved of another question that was asked with slight modification, and did not specifically render an opinion as to the one other question, that being if CSAAS applied to 14-year old children. It is therefore not obvious to which question petitioner is arguing that his trial counsel should have posed an objection. Nor is it apparent that any objection posed to the three questions asked, or motion to strike testimony given in response thereto, would have been sustained as meritorious. An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel. Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)). See also Rhoades v. Henry,

12

596 F.3d 1170, 1179 (9th Cir. 2010) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere"); Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009), cert. denied, ___U.S.___, 130 S. Ct. 1154 (2010) (counsel's failure to object to testimony on hearsay grounds not ineffective where objection would have been properly overruled); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

Moreover, assuming arguendo that his trial counsel's performance in failing to object to these questions or moving to strike the testimony provided in response was deficient, petitioner has failed to demonstrate any prejudice resulting therefrom. In order to demonstrate prejudice petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Though petitioner argues the "pivotal point" of his trial was the prosecution expert's testimony regarding CSAAS, the truly persuasive and powerful testimony was that of the victim, who described her repeated molestation by petitioner in clear and explicit detail. (See RT at 439-541.) In light of that testimony there is not a reasonable probability that, but for counsel's failure to object to the prosecutor's questions of the CSAAS expert, the result of petitioner's trial would have been different.

Petitioner has failed to establish that the state court's rejection of his ineffective assistance of trial counsel claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Accordingly, he is not entitled to federal habeas relief with respect to his claim of ineffective assistance of trial counsel.

C. Ineffective Assistance of Appellate Counsel

Petitioner asserts that his appellate counsel rendered ineffective assistance by failing to "allege the facts and law necessary to overcome" the California Court of Appeal's

determination that his trial counsel's failure to object forfeited his claim with respect to fact-specific hypothetical questions. (Pet. at 21.) Petitioner also argues that his appellate counsel "failed to identify the ineffectiveness of [his] trial counsel" and failed to raise a "sentencing error" that will be addressed below. (Id.)

As with the preceding claim, the last reasoned state court decision as to this claim is from the San Joaquin County Superior Court. In denying petitioner's May 22, 2007, state habeas petition the San Joaquin County Superior Court rejected petitioner's ineffective assistance of appellate counsel claim, stating:

> The same standards apply to the performance of appellate counsel. Here, the record is clear that defense counsel did not object and that fact alone constitutes a waiver regardless of whether the objection should have been made in the first place. No argument could be made by appellate counsel to the contrary and so, appellate counsel's performance was not deficient in that regard.

(Resp't's Lod. Doc 11 at 31.)

The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id. See also Smith v. Stewart, 140 F.3d 1263, 1274 n. 4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") There is, of course, no obligation to raise meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing to raise a weak issue. See Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this

14

context, petitioner must show that, but for appellate counsel's errors, he probably would have prevailed on appeal. Id. at 1434 n. 9.

Here, the record belies petitioner's claim of ineffective assistance of appellate counsel. In his appeal to the California Court of Appeal, petitioner's counsel did in fact argue that the prosecutor's fact-specific hypothetical questions were improper and resulted in reversible error. (Resp't's Lod. Doc. 4 at 17-21.) The California Court of Appeal rejected that argument, finding that petitioner's trial counsel did not object to those questions thereby waiving the issue. (Opinion at 6-8.) Petitioner now argues that his appellate counsel should have alleged "the facts and law necessary to overcome" the appellate court's decision on that issue but does not provide any examples of such facts or law.

Further, for the reasons set forth below, this court finds no merit in petitioner's sentencing error claim. Of course, as noted above, petitioner's appellate counsel had no obligation to raise meritless issues on appeal. Strickland, 466 U.S. at 687-88.

Petitioner has failed to establish that the state court's rejection of his ineffective assistance of appellate counsel claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Accordingly, he is not entitled to federal habeas relief on his claim that his appellate counsel provided ineffective assistance.

    D.  Sentencing Error

Petitioner next asserts that the trial court sentenced him to consecutive terms of imprisonment based on facts not found true by the jury or admitted by petitioner, in violation of federal law. (Pet. at 23.)

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt." In Blakely v. Washington, 542 U.S. 296, 303-04 (2004) the Supreme Court held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

In People v. Black, 35 Cal.4th 1238, 1254-55 (2005) ("Black I"), the California Supreme Court held that a defendant's Sixth Amendment jury trial rights under Blakely were not violated where the trial court made factual findings supporting its decision to impose a sentence of the upper term of imprisonment. This aspect of the court's decision was later overruled by the United States Supreme Court's decision in Cunningham, which held that California's sentencing scheme, by providing for a presumptive middle term but allowing trial judges to find facts supporting imposition of an upper term, violated the Sixth Amendment. Cunningham v. California, 549 U.S. 270, 293 (2007). In Black I, however, the California Supreme Court also concluded that a trial court's imposition of consecutive, as opposed to concurrent, sentences under California's sentencing scheme did not violate the Sixth Amendment. Black I, 35 Cal.4th at 1261-64. In Cunningham the United States Supreme Court did not address the propriety of judicial factfinding to support the imposition of consecutive sentences and thus did not disturb that portion of Black I.

On remand following Cunningham, the California Supreme Court again held that the Sixth Amendment, as interpreted by the United States Supreme Court in Blakely and its predecessor cases, was not offended by judicial factfinding supporting the imposition of consecutive sentences. People v. Black, 41 Cal.4th 799, 820-23 (2007), cert. denied, 552 U.S. 1144 (2008) ("Black II"). The California Supreme Court concluded that nothing in the United States Supreme Court's Sixth Amendment jurisprudence implicated factual determinations "that do not serve as the functional equivalent of an element of a crime." Id. at 821 (internal citations and quotation marks omitted). Because a trial judge makes the concurrent - versus - consecutive sentencing decision "after the jury has made the factual findings necessary to subject the

defendant to the statutory maximum sentence on each offense" and that decision "does not implicate the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense," the court concluded that the decision to impose consecutive sentences does not violate the defendant's constitutional right to a jury trial. Id. at 823 (internal citations and quotation marks omitted).

In Oregon v. Ice, ___U.S.___, 129 S. Ct. 711 (2009) the United States Supreme Court reviewed precisely the issue presented here by petitioner, that is whether, "[w]hen a defendant has been tried and convicted of multiple offenses, each involving discrete sentencing prescriptions, does the Sixth Amendment mandate jury determination of any fact declared necessary to the imposition of consecutive, in lieu of concurrent, sentences?" Ice, 129 S. Ct. at 714. The United States Supreme Court held that the Sixth Amendment does not so require, because determination of facts underlying a consecutive sentence lies outside the historical province of the jury and because no "impelling reason" counsels in favor of abrogating the states' interest in providing rules to guide courts in making such determinations. Id. at 717-19.

For the reasons set forth above, petitioner should be denied federal habeas relief with respect to his sentencing error claim.

E. Evidentiary Hearing

Finally, petitioner has requested an evidentiary hearing on his claims. (Pet. at 21.) Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

/////

17

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

The undersigned concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is neither necessary or appropriate with respect to the claims raised in the instant petition. The facts alleged by petitioner in support of these claims, even if established at a hearing, would not entitle him to federal habeas relief. Therefore, petitioner's request for an evidentiary hearing should be denied.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus (Doc. No. 1) and his request for an evidentiary hearing be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3  shall be served and filed within seven days after service of the objections.  Failure to file

4  objections within the specified time may waive the right to appeal the District Court's order.

5  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

6  1991).  In any objections he elects to file petitioner may address whether a certificate of

7  appealability should issue in the event he elects to file an appeal from the judgment in this case.

8  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

9  certificate of appealability when it enters a final order adverse to the applicant).

10 DATED: May 26, 2010.

*[Signature: Dale A. Drozd]*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
santamaria1797.hc